RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 11a0164p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

VALENTINE GRDEN,

       *Plaintiff-Appellant,*

    *v.*

LEIKIN INGBER & WINTERS PC,

       *Defendant-Appellee.*

No. 10-1182

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 09-10579—Victoria A. Roberts, District Judge.

Argued: May 31, 2011

Decided and Filed: June 27, 2011

Before: BOGGS and KETHLEDGE, Circuit Judges; COLLIER, Chief District Judge.[*]

_____

## COUNSEL

**ARGUED:** Stephen R. Felson, Cincinnati, Ohio, for Appellant. Robert G. Kamenec, PLUNKETT COONEY, Bloomfield Hills, Michigan, for Appellee. **ON BRIEF:** Stephen R. Felson, Cincinnati, Ohio, for Appellant. Christine D. Oldani, PLUNKETT COONEY, Detroit, Michigan, for Appellee.

_____

## OPINION

_____

KETHLEDGE, Circuit Judge. Valentine Grden says that Leikin, Ingber & Winters, P.C. violated the Fair Debt Collections Practices Act in two ways. First, in a state-court debt-collection action against Grden, Leikin served Grden with a document

_____

[*]The Honorable Curtis L. Collier, Chief United States District Judge for the Eastern District of Tennessee, sitting by designation.

appearing to be a motion for default judgment, although Grden had not missed the deadline for answering the complaint. Second, when Grden thereafter called Leikin to verify his account balance, Leikin responded with incorrect amounts. The district court granted summary judgment to Leikin, finding that the motion for default was not deceptive and that Leikin's communications containing the wrong amounts were not covered by the Act. We reverse as to the motion and affirm as to the balance statements.

I.

The essential facts are undisputed. Oakwood Healthcare treated Valentine Grden for an infection. When Grden failed to pay for those services, Oakwood referred Grden's account to a collections agency, which later hired Leikin to collect the debt. When Leikin received the account, Grden owed $2,902.35. For the most part, Grden made monthly payments to Leikin for several years, though he missed two payments and made several partial ones. By December 2008, Grden had paid his principal balance down to $536.35. Leikin sued Grden in Michigan court for the outstanding amount, which with interest totaled $678.27. Leikin attached to the complaint a document entitled "Combined Affidavit of Open Account and Motion for Default Judgment." Leikin then served Grden with the collection complaint and the motion.

Shortly thereafter, Grden called Leikin to verify his account balance. A Leikin employee incorrectly told Grden that he owed $1,016.20. Grden was surprised that the amount due had increased by so much in "a matter of a week or so." He asked for verification in writing. Leikin sent him a letter with an attached "ledger card" that reiterated the $1,016.20 balance due.

Grden later sued Leikin in federal court, alleging that Leikin had violated the Fair Debt Collection Practices Act by making false statements about Grden's outstanding balance and by serving Grden with a motion for default judgment at the same time Leikin served him with the collection complaint. Leikin moved for summary judgment, which the district court granted. This appeal followed.

II.

We review de novo the district court's grant of summary judgment, viewing the facts in the light most favorable to Grden, the non-moving party.  *Dowling v. Cleveland Clinic Found.*, 593 F.3d 472, 476 (6th Cir. 2010).

The Fair Debt Collection Practices Act generally prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  Grden says that Leikin's motion and misstatements violate this prohibition.

A.

Whether language used by a debt collector is deceptive or misleading is determined from the perspective of the least-sophisticated consumer.  *See Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 611-12 (6th Cir. 2009).  The test is objective, and asks whether there is a reasonable likelihood that an unsophisticated consumer who is willing to consider carefully the contents of a communication might yet be misled by them.  *See Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 592 (6th Cir. 2009).  Truth is not always a defense under this test, since sometimes even a true statement can be misleading.  *Id*. at 591-92.  (A familiar example is "Captain sober today," written in the ship's log about a captain who never drinks.)

Grden argues that Leiken's "motion for default" was misleading because it falsely suggested that Grden had already missed the deadline to respond to Leikin's collection action.  We think the record would allow a jury to agree with Grden on that point.  The relevant document was entitled a motion; and a motion's factual basis usually precedes the motion itself.  That is not an abstruse concept:  even unsophisticated people understand that there are rules against filing baseless documents with the courts.  And thus an unsophisticated consumer who is served with a motion for entry of default judgment might well think that he has somehow already defaulted.  Grden was served with such a motion here, so the question becomes whether other aspects of the document would make it clear to an unsophisticated consumer that he had not already defaulted.

*See Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 441 (6th Cir. 2008) (statements "can be deceptive if they are open to more than one reasonable interpretation, at least one of which is inaccurate" (internal quotation marks omitted)).

Leiken says the motion did precisely that, since it requested judgment "upon default." In Leiken's view, the least sophisticated consumer would understand from those two words that he had not already defaulted. But to us those words are an exercise in studied ambiguity. They merely recite the necessary condition for relief, rather than saying anything about whether the condition has already occurred. Thus, there is nothing about the motion for default judgment that would upend the consumer's natural inclination to think there must be some factual basis for it—*i.e.*, that he has already defaulted. That means that a jury could find the motion to be misleading. And it bears mention that the deception would not be trivial, since it could "suggest[] to an unsophisticated consumer that any right he might have to challenge the demand for payment had been extinguished[.]" *Muha v. Encore Receivable Mgmt., Inc.*, 558 F.3d 623, 629 (7th Cir. 2009) (Posner, J.). We therefore reverse the district court's grant of summary judgment as to Grden's claim with respect to the putative motion for default judgment.

B.

Grden next claims that Leikin violated the Act when it gave him inaccurate information regarding his outstanding balance both on the phone and in writing (the "balance statements"). In response, Leikin admits that the figures were wrong, but says that the statements are not actionable because they were not made "in connection with the collection of any debt." 15 U.S.C. § 1692e.

The text of § 1692e makes clear that, to be actionable, a communication need not itself be a collection attempt; it need only be "connect[ed]" with one. Thus, we agree with the Seventh Circuit that an "explicit demand for payment" is not always necessary for the statute to apply. *Gburek v. Litton Loan Serv. LP*, 614 F.3d 380, 385 (7th Cir. 2010). But it is just as clear that "the statute does not apply to *every* communication

between a debt collector and a debtor."   *Id.* at 384-85 (emphasis in original).  So the question is where to draw the line.

We draw it at the same place the Seventh Circuit did in *Gburek*: for a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor.  *See id.* at 385 ("a communication made specifically to induce the debtor to settle her debt will be sufficient to trigger the protections" of the Act).  Obviously, communications that expressly demand payment will almost certainly have this purpose.   But so too might a communication that merely refers the debtor to some other communication that itself demands payment.  *See, e.g.*, *id.* at 386 (third-party letter directing debtor to contact creditor was sent in connection with collection of a debt).  Thus, to use the language of § 1692e, a letter that is not itself a collection attempt, but that aims to make a such an attempt more likely to succeed, is one that has the requisite connection.

Here, on one hand, the balance statements obviously came from a debt collector—indeed from one that had already sued Grden—and they stated a balance "due."   On the other hand, the statements themselves did not demand payment or threaten any consequences if Grden did not pay.  But for us the decisive point is that Leiken made the balance statements only after Grden called and asked for them.  The statements were merely a ministerial response to a debtor inquiry, rather than part of a strategy to make payment more likely.  *See Gburek*, 614 F.3d at 384 (letter that was "merely a description of the current status of the debtor's account" did not have the requisite connection).  Thus, under the circumstances present here, a reasonable jury could not find that an animating purpose of the statements was to induce payment by Grden.  We therefore affirm the district court's grant of summary judgment as to those statements.

The district court's judgment is reversed in part and affirmed in part, and the case remanded for further proceedings consistent with this opinion.