NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0581n.06
No. 18-3081

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| PETER SMITH, | ) | **FILED**<br>Nov 21, 2018<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| NATIONSTAR MORTGAGE, LLC, | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| Defendant-Appellee. | ) | |
| | ) | |

BEFORE: COLE, Chief Judge; GRIFFIN and KETHLEDGE, Circuit Judges.

GRIFFIN, Circuit Judge.

After Plaintiff Peter Smith defaulted on his mortgage, he sued Defendant Nationstar (his mortgagee) for, among other things, violation of the Fair Debt Collection Practices Act. The district court dismissed the claim with prejudice. Smith now appeals that decision. We affirm.

I.

Ten years ago, Smith took out a $375,000 loan to buy a house. Two years into the loan, he defaulted on it. Then Nationstar acquired it. Because Smith was experiencing a financial hardship, Nationstar modified the loan to reduce his monthly payment by more than a third.

Smith made the modified payments for nearly four years. Then, in 2015, Nationstar sent him a default notice. He continued making partial payments while his default amount continued to grow—reaching over $25,000 by September 2017 (the most recent figure available in the

record). In February of 2016, Smith apparently filed a lawsuit in state court that he dismissed without prejudice a few months later.

And on June 9, 2017, Smith filed this lawsuit in state court. He asserted twelve claims—some state and some federal—against Nationstar (which he listed as two separate entities with similar names, but which Nationstar has clarified are in fact the same entity) and Solutionstar (a subsidiary of Nationstar that inspects properties on Nationstar's behalf, which is now known as "Xome Holdings, LLC," and which is not part of this appeal). The defendants removed the case to federal court, then moved to dismiss the complaint. The district court dismissed the federal claims with prejudice and remanded the state claims to state court.

Smith now appeals the dismissal of only his FDCPA claim, which he asserted against Nationstar but not Solutionstar.

## II.

In reviewing the dismissal of Smith's FDCPA claim, we must answer two related questions. First, does Ohio's Savings Statute—which allows a plaintiff to re-file a lawsuit that has failed for a reason other than its merits within a year of its failure or within the applicable statute of limitations, whichever is later—apply to FDCPA claims? If the statute applies, Smith may rest his claim on allegations dating back to February 10, 2015 (one year before he apparently filed his initial lawsuit); if the statute doesn't apply, Smith may not rest his claim on anything that occurred before June 9, 2016 (one year before Smith filed this lawsuit). And second, has Smith pleaded a plausible FDCPA violation?

## A.

As to the first question, the district court concluded that Ohio's Savings Statute doesn't apply to FDCPA claims, meaning many of Smith's allegations relate to actions that fall outside

the statute of limitations. We review de novo whether a plaintiff has brought a claim within the limitations period. *See Tolbert v. Ohio DOT*, 172 F.3d 934, 938 (6th Cir. 1999).

Smith asks us to rule that Ohio's Savings Statute saves his claim, but his argument amounts to nothing more than saying that the statute applies because it applies. He reproduces the statute's text and cites Ohio case law mentioning that the statute can extend the time to assert Ohio claims, but goes no further. He never explains why the statute should have the same effect on federal claims with federally mandated limitations periods, and he provides no legal support for such a position.

Even had Smith presented a more thorough argument, it would fail because state savings statutes do not apply to claims stemming from federal laws that themselves have limitations periods. Supreme Court precedent shows why. In *Burnett v. New York Central Railroad Co.*, the Court rejected a claim that the Ohio Savings Statute applied to the Federal Employers' Liability Act because "the incorporation of variant state saving statutes would defeat the aim of a federal limitation provision designed to produce national uniformity." 380 U.S. 424, 433 (1965) (cleaned up). In other words, a federal law that sets its own limitations period creates uniformity that a state may not disrupt.

Our own case law follows the Supreme Court's lead; we have invoked *Burnett* repeatedly when determining whether to apply state savings statutes to other federal laws, noting that when a claim is based on a federal law that has its own statute of limitations, "it is straightforward that those limitations control." *Ruhl v. Ohio Health Dep't*, 725 F. App'x 324, 334 (6th Cir. 2018); *see also Ester v. Amoco Oil Co.*, No. 93-6530, 1995 U.S. App. LEXIS 32891 at *5–6 (6th Cir. Aug. 31, 1995); *Johnson v. Ry. Express Agency, Inc.*, 489 F.2d 525, 530 (6th Cir. 1973), *aff'd*, 421 U.S. 454 (1975).

Here, the FDCPA has a one-year limitations period. 15 U.S.C. § 1692k(d). Under a straightforward analysis, that period controls. Smith provides no reason for us to warp that analysis, and we see nothing unique about the FDCPA that warrants doing so. When Congress said that a party may bring an FDCPA claim "within one year from the date on which the violation occurs," *id.*, it did not say that a state may create an exception to that limitation.

Smith also argues that the district court erred by not extending the statute of limitations under the doctrine of equitable tolling. We will not consider this argument, however, because Smith raises it for the first time on appeal. We "review the case presented to the district court," not "a better case fashioned after a district court's unfavorable order." *Barney v. PNC Bank*, 714 F.3d 920, 925 (6th Cir. 2013).

B.

As to the second question, the district court dismissed Smith's FDCPA claim under Federal Rule of Civil Procedure 12(b)(6). We review that decision de novo. *Shuler v. Garrett*, 743 F.3d 170, 172 (6th Cir. 2014). Thus, we must determine whether Smith's complaint contains factual allegations that, if accepted as true, state a plausible claim to relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Smith submits that he adequately pleads an FDCPA claim, but he has abandoned his argument by submitting a perfunctory one. *See Vander Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056, 1063 (6th Cir. 2014). He neither identifies the elements of an FDCPA claim nor connects his allegations to those elements to show he states a plausible claim. Instead, he focuses on Nationstar's arguments to the district court, which he contends—without explanation—are inconsistent with an opinion from the United States District Court for the Southern District of Florida. But on appeal, the burden of persuasion falls to Smith, not Nationstar. And the opinion

Smith cites does not bind us. Although it may be persuasive authority, Smith never details why it should persuade us here. By failing to explain, element by element, how his allegations state a plausible FDCPA claim, Smith has presented a skeletal argument, leaving us to put flesh on its bones. This he may not do. *See United States v. Hendrickson*, 822 F.3d 812, 829 n.10 (6th Cir. 2016).

Even had Smith provided more than cursory assertions of having stated a claim, his argument would fail. The FDCPA prohibits debt collectors from using a "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. To plead an FDCPA claim, a plaintiff must allege (1) that he or she is a "consumer" as defined by the Act; (2) that the "debt" arises out of transactions that are primarily for personal, family, or household purposes; (3) that the defendant is a "debt collector" as defined by the Act; and (4) that the defendant violated § 1692e's prohibitions. *See Wallace v. Wash. Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012). We need not address the first three elements because Smith's complaint fails as to the fourth: Smith does not plead a plausible violation of § 1692e.

To violate § 1692e, a debt collector's representation or action must be materially false or misleading (meaning it must tend to mislead or confuse the least sophisticated consumer), *id*. at 326–27, and its purpose must be to induce payment by the debtor, *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011). Smith's complaint lists a litany of Nationstar's actions that supposedly violated § 1692e, but only three of them occurred within the limitations period. First, in February 2017, Nationstar sent him a notice that it had denied his request for loss-mitigation assistance (a process that reduces the potential loss incurred when borrowers default) because he hadn't accepted the offer or had withdrawn his request. Second, in May 2017,

Nationstar sent him a default notice. And third, later in May 2017, Nationstar charged him a $15 property-inspection fee.

Smith fails to state a plausible violation of § 1692e because he never alleges that these actions were materially false or misleading and that the purpose of each was to induce him to pay his debt. He does include a batch of conclusory allegations such as: "Nationstar violated the FDCPA by falsely representing the character, amount, or legal status of debt"; "Nationstar violated the FDCPA by mailing a series of letters and e-mailing letters/correspondence that would confuse the 'least sophisticated consumer' about his/her rights"; and "Nationstar violated 15 U.S.C.A. §1692(e)(2)(a) [*sic*] by alleging in writing that the amount of the debt owed is accurate when, in fact, it is inaccurate." But he never connects those general assertions to the specific actions Nationstar took within the limitations period. So he fails to create the combination he needs to state an FDCPA claim: (1) an action Nationstar took within the limitations period (2) that was materially false or misleading and (3) that was meant to induce him to pay his debt.

C.

As an alternative to his primary arguments, Smith challenges the dismissal with prejudice by requesting that we "grant [him] leave to file his Second Amended Complaint to cure any alleged pleading deficiencies." This we cannot do. For one thing, we don't grant leave for a party to take an action in a district court. We review the district court's decision, and a party may not bypass the constraints of appellate review by asking us to do something in the first instance.

Moreover, Smith never moved to amend his complaint. Instead, he included a "throwaway" request for leave to amend his complaint in his opposition to Defendants' motion to dismiss. Such a request is not a substitute for a motion to amend. *See Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014).

Finally, Smith's request is brief, perfunctory, and patently inadequate. He never outlines the standard of review (abuse of discretion). *Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005). He never identifies the factors courts consider when deciding whether to grant leave to amend (undue delay in filing; lack of notice to the opposing party; bad faith by the moving party; failure to cure deficiencies by previous amendments; undue prejudice to the opposing party; and futility of amendment). *Id.* And he never explains *why* those factors favored granting him leave. Indeed, because he never attached a copy of a proposed amended complaint to a formal motion for leave to amend, he hasn't even given us enough information to consider the factors relevant to his request. For example, without knowing what the amended complaint would say, it is impossible to determine whether amendment would be futile.

Accordingly, Smith has not shown that the district court erred by dismissing his claim with prejudice.

## III.

For these reasons, we affirm the dismissal, with prejudice, of Smith's FDCPA claim.