NOT RECOMMENDED FOR PUBLICATION
File Name: 19a0331n.06

No. 18-5707

<table>
<tr><td rowspan="11">

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

YVETTE WOODY and SIMON WOODY,

    Plaintiffs-Appellants,

v.

AURORA COMMERCIAL CORP., et al.,

    Defendants-Appellees.

</td></tr>
</table>

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jul 02, 2019
DEBORAH S. HUNT, Clerk

YVETTE WOODY and SIMON WOODY,    )
    )
    Plaintiffs-Appellants,    )
    )
    )    ON APPEAL FROM THE
v.    )    UNITED STATES DISTRICT
    )    COURT FOR THE WESTERN
AURORA COMMERCIAL CORP., et al.,    )    DISTRICT OF TENNESSEE
    )
    Defendants-Appellees.    )
    )

BEFORE:    BOGGS, BATCHELDER, and STRANCH, Circuit Judges.

ALICE M. BATCHELDER, Circuit Judge. This case stems from the chaotic aftermath of the housing crisis a decade ago. Yvette and Simon Woody defaulted on an "underwater" mortgage they had executed with First Magnus Financial Corporation ("First Magnus"). A different lender and a different servicing company, Aurora and Nationstar, foreclosed on the property and attempted to collect the remainder of the loan. The parties litigated numerous state-law claims in Tennessee state court and the Woodys lost on each one. The Woodys then filed suit in federal district court raising a combination of those same state-law claims, new state-law claims, and new federal claims. The district court dismissed all but one claim. After discovery, the district court granted summary judgment for Aurora and Nationstar on the lone remaining claim. The Woodys then moved to alter the judgment and amend their complaint, which the district court denied. The Woodys appeal all of the district court's rulings. We affirm.

I.

In 2006, Yvette and Simon Woody ("Woodys") executed a note and deed of trust with First Magnus for a mortgage on real property ("the mortgage"). By 2009, the Woodys defaulted on the mortgage. First Magnus has since gone out of business. In 2010, Aurora Commercial Corporation and Aurora Loan Services, LLC ("Aurora"), represented that the mortgage had been transferred to it from an interim owner, and Aurora appointed Nationstar Mortgage, LLC ("Nationstar") as substitute trustee. In 2012, Aurora transferred the servicing of the note and mortgage to Nationstar, which then sold the property at a foreclosure sale. Between 2012 and 2015, the Woodys and Aurora litigated the rights of each party under the mortgage, the legality of the note transfer and assignment to Nationstar, and consequently the validity of the foreclosure sale in Tennessee state courts. *See Aurora Loan Servs., LLC v. Woody*, No. W2014-00761-COA-R3-CV, 2014 WL 7463032 (Tenn. Ct. App. Dec. 30, 2014), *perm. app. denied* (Tenn. June 16, 2015). The state courts found that Aurora held valid title to the note and properly assigned it to Nationstar, which was within its rights to execute a foreclosure sale. *Id*.

The proceeds of the foreclosure sale did not cover the remaining balance due on the Woodys' mortgage loan. In September and October 2015, the Woodys sent identical letters to Aurora and Nationstar requesting "validation" and "competent evidence" that the Woodys had a "contractual obligation" to pay a debt and giving notice to Aurora and Nationstar that the Woodys were disputing any claimed debt pursuant to the Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. § 1692g. On November 4, 2015, Aurora sent a response letter ("Aurora Letter") to the Woodys informing them that servicing of their mortgage account had been transferred to Nationstar and all future inquiries should be addressed to Nationstar. Also on November 4, 2015, Nationstar sent a response letter ("Nationstar Letter") to the Woodys confirming its status as the

loan servicer, its rights and obligations under the mortgage, and a detailed payment history of the Woodys' loan, including the amount remaining due.

In early 2016, after originally filing a complaint pro se, the Woodys—now with counsel—filed an amended complaint against Aurora and Nationstar in the United State District Court for the Western District of Tennessee. The Woodys asserted eight claims of illegality, including violations of state and federal law, regarding alleged fraud, misrepresentation, and wrongful handling of the mortgage. Aurora and Nationstar moved to dismiss the amended complaint. The district court granted the motion to dismiss with regard to seven of the eight claims, holding that five claims were barred from litigation by claim preclusion (res judicata) because of the previous state-court litigation and that two claims were inadequately pled. The only claim allowed to proceed was the allegation that the Nationstar Letter violated a provision of the FDCPA. After brief discovery, Aurora and Nationstar moved for summary judgment. The district court held that no reasonable jury could find that the Nationstar Letter was a debt-collection activity and that thus it was not actionable under the FDCPA. The district court granted summary judgment in favor of Aurora and Nationstar.

The Woodys then filed a motion to alter the judgment pursuant to Rule 59 of the Federal Rules of Civil Procedure and for leave to amend the complaint pursuant to Rule 15. The Woodys claimed that "newly discovered facts" justified altering the judgment and "manifest injustice" would result if the motion were not granted. The district court held that those alleged "new facts" were readily available prior to the entry of judgment and denied the motion, noting that "Plaintiff's Motion attempts to relitigate issues already decided by this court."

On appeal, the Woodys argue that the district court erred (1) in dismissing seven of their original claims; (2) in granting summary judgment for Aurora and Nationstar with respect to the

FDCPA claim; and (3) in denying their post-judgment motion to alter the judgment and for leave to amend their complaint.

## II.

We review de novo a district court's decision to grant a motion to dismiss. *Robert N. Clemens Tr. v. Morgan Stanley DW, Inc.*, 485 F.3d 840, 845 (6th Cir. 2007). We also review de novo a district court's grant of summary judgment. *Mazur v. Young*, 507 F.3d 1013, 1016 (6th Cir. 2007). And while we generally review for abuse of discretion district-court decisions regarding motions to alter under Rule 59 of the Federal Rules of Civil Procedure, when the motion seeks review of a grant of summary judgment, we review de novo. *ACLU of Ky. v. McCreary County*, 607 F.3d 439, 450 (6th Cir. 2010).

## A.

The Woodys appeal the district court's decision granting Aurora's motion to dismiss with regard to seven of the eight claims in the Woodys' amended complaint. The district court found that five of those claims were barred by claim preclusion (res judicata) due to the previous state-court litigation, and that two claims were inadequately pled. However, in their appellate briefing regarding the motion to dismiss, the Woodys develop no serious arguments as to how the district court erred with respect to its decision, instead simply reciting the applicable legal standard and restating the allegations of the complaint. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation," are forfeited. *Gradisher v. City of Akron*, 794 F.3d 574, 586 (6th Cir. 2015) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997)).

To the extent that the Woodys address at all their contention that the five claims are not barred by claim preclusion, they do so only by restating their Rule 59 motion argument that "new

facts" show that Aurora and Nationstar defrauded the state courts below. But, as we discuss later, the Woodys' Rule 59 motion is without merit as the "new facts" it relies upon are not new.

With respect to the two claims the district court dismissed because they were inadequately pled, the Woodys fare no better. As to the civil conspiracy claim, the Woodys spend a mere two sentences of their brief asserting that it was "properly pled" and that the district court's decision to the contrary was "erroneous." As to the fraud claim, the Woodys recite the legal standard and facially assert that it was pled in their amended complaint but identify no factual allegations demonstrating *how* the Woodys met two critical elements of that legal standard—namely, how the Woodys "reasonably relied" on Aurora's alleged misrepresentations and how they "suffered damage as a result." *PNC Multifamily Capital Institutional Fund XXVI L.P. v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 548 (Tenn. Ct. App. 2012).

The district court did not err in granting Aurora's motion to dismiss.

**B.**

The Woodys also appeal the district court's order granting summary judgment to Aurora and Nationstar. In that order, the district court denied the Woodys' improper "request" to amend their complaint and held that the Nationstar Letter was not a debt collection activity under the FDCPA.

In opposing the motion for summary judgment, the Woodys attempted to reassert two of the original seven claims that had already been dismissed and requested to amend their complaint. The district court denied the reassertion of those previously dismissed claims and declined to grant the request to amend. We have repeatedly held that new claims may not be raised in response to a motion for summary judgment except in accordance with Rule 15(a). *Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005). On appeal, the Woodys

do not address how the district court's decision to deny their request to amend was in error other than to describe it as a "troubling . . . failure of the District Court to weigh in on evidence." Again, we do not consider "[i]ssues adverted to in a perfunctory manner." *Gradisher*, 794 F.3d at 586.

The only claim the district court allowed to proceed past the motion to dismiss was the FDCPA claim regarding the Nationstar Letter. Under 15 U.S.C. § 1692e, the FDCPA prohibits "false, deceptive, or misleading representation[s] or means in connection with the collection of a debt." The Woodys contend that information in the Nationstar Letter was false, specifically that the remaining balance on their loan listed in the Nationstar Letter did not reflect a deduction for the 2012 foreclosure sale or reflect a release of funds from a suspension account. Thus, the Woodys argue, the Nationstar Letter violated § 1692e and they are entitled to relief. Aurora and Nationstar objected only on the ground that the Nationstar Letter was not a collection activity, remaining silent on the issue of whether the Nationstar Letter contained inaccurate information relating to the remaining balance of the loan.[1]

The district court agreed that deciding the threshold question of whether the Nationstar Letter was a collection activity was necessary before considering any falsity or deception in the Nationstar Letter. Both parties briefed the issue. Finding no material issues of fact relating to that threshold issue, the district court applied this circuit's seven-factor legal standard for determining whether a communication is a debt-collection activity. *See Goodson v. Bank of Am., N.A.*, 600 F. App'x 422, 431 (6th Cir. 2015); *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011). The district court held that, "[o]n balance, a reasonable jury could not find that" the Nationstar Letter was a debt-collection activity.

---

[1] In fact, at no point during the district court proceedings did Aurora and Nationstar even address the contested remaining balance listed in the Nationstar Letter. In their brief on appeal, however, they seem to concede an error, writing that "it is unclear from the Amended Complaint what, if any, actual damages the Woodys have incurred due to [our] failure to credit the principal of their debt."

On appeal, the Woodys do not argue that the district court applied the wrong legal standard. Rather, it appears that the Woodys believe the district court wrongly applied the legal standard, but they do not explain how. Instead, the Woodys list nine items that the district court "failed to review." The allegations as to two of those nine items are flagrantly false: that the district court did not consider that the Nationstar Letter identifies Nationstar as a debt collector and that the district court did not consider that the Nationstar Letter reported an amount owed. In fact, the district court explicitly considered both of these items: "The Nationstar Letter was sent by a debt collector that had no relationship with Plaintiffs, and attached a 'Payment History' that had a remaining balance." Furthermore, the Woodys' brief contains no record cites for any of the nine items listed[2], so it is difficult for us to determine which part of the Nationstar Letter those items reference. But perhaps most fatal to the Woodys' appeal is that the brief makes no effort whatsoever to distinguish this case from *Grden* itself, where we explained that the "decisive point [was] that [the lender] made the balance statements only after [the plaintiff] called and asked for them. The statements were merely a ministerial response to a debtor inquiry, rather than part of a strategy to make payment more likely." 643 F.3d at 173. Here, too, the Nationstar Letter was sent only after the Woodys requested "competent evidence" of their contractual obligation to pay, including the "amount of the debt." To the extent that the Woodys may have had a colorable argument that the district court erred, we cannot examine it because it has been forfeited. *Gradisher*, 794 F.3d at 586.

## C.

Finally, the Woodys appeal the district court's decision to deny their motion to alter the judgment under Rule 59 and for leave to amend under Rule 15. The Woodys argued that "newly

---

[2] It should also be noted that after the first two pages, the record cites in their brief contain no document or page numbers.

discovered evidence" justified altering the judgment and that "manifest injustice" would result if the judgment were not altered in light of these new facts. The district court held that those "new facts" were readily available prior to the entry of judgment and as such "they do not constitute newly discovered evidence justifying relief under Rule 59." On appeal, instead of developing an argument as to how the district court erred or explaining why those facts were not actually available prior to the entry of judgment, the Woodys concede that they already referenced the "newly discovered evidence" at the motion-to-dismiss and summary-judgment stages. In essence, the Woodys' brief merely recites the allegations of their original motion. With respect to the claim of manifest injustice, the district court noted that, "Plaintiffs make no argument other than the conclusory assertion that manifest injustice entitles them to relief." The same is true here—the Woodys' entire argument regarding manifest injustice consists of a single sentence case-citing the definition for manifest injustice. This barely asserted, wholly undeveloped argument is forfeited. *Gradisher*, 794 F.3d at 586.

## III.

For the foregoing reasons, we AFFIRM the judgment of the district court.